IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| TERRI COLLIER, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>Defendant. )<br>_____ ) | Civil No. 3:16cv59 (MHL) |

## REPORT AND RECOMMENDATION

Terri Collier ("Plaintiff") began receiving benefits in 1977 as a minor, and she continued to receive benefits as an adult. On September 24, 2007, the Social Security Administration ("Agency") informed Plaintiff that it could no longer pay her benefits, because she had married and that the Agency had overpaid her since her marriage. On October 5, 2007, Plaintiff filed a request for waiver of overpayment, which the Agency denied. Plaintiff appealed to an Administrative Law Judge ("ALJ"), who waived part of Plaintiff's overpayment. The Appeals Council subsequently vacated the ALJ's decision and remanded the case for a new hearing and decision. On remand, a different ALJ refused to waive recovery of the overpayment. On February 23, 2013, the Appeals Council denied Plaintiff's request for review.

On January 31, 2014, this Court remanded the case to the Agency for clarification regarding the ALJ's calculation of Plaintiff's income and expenses. *Collier v. Colvin*, 2014 WL 357029 (E.D. Va. Jan. 31, 2014). On remand, the ALJ again refused to waive recovery of the overpayment. On November 30, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing entitlement to a full waiver of overpayment. (Mem. in Support of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 9) at 1.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgement (ECF No. 10) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Plaintiff began receiving benefits as a teenager in 1977 and continued to receive benefits as a disabled adult child. (R. at 20-25, 30, 47, 50.) Plaintiff married on September 22, 2002, and changed her name in January 2003. (R. at 22, 47, 50.) Although marriage terminated her eligibility for benefits, the Agency took no action to cease her benefits, which Plaintiff continued to receive. (R. at 20-25, 42, 47-48.)

In February 2003, the Agency reviewed Plaintiff's entitlement to benefits. (R. at 30, 47, 50.) Plaintiff appeared under her married name and told the ALJ that she had married. (R. at 30, 50, 72, 316-17.) The ALJ found that Plaintiff's disability continued. (R. at 30, 50.) The Agency also reviewed Plaintiff's entitlement in March 2003 and June 2005, after which she continued to receive benefits. (R. at 30, 50.) On September 24, 2007, the Agency notified Plaintiff that,

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

because of her marital status, she no longer qualified for benefits and that the Agency had overpaid her since her marriage began. (R. at 26-28.)

## II. PROCEDURAL HISTORY

On October 5, 2007, Plaintiff filed a request for waiver of the overpayment amount. (R. at 29-36.) The Agency denied her request. (R. at 44-45.) Plaintiff appealed the decision and then had a personal conference with an agency employee, who denied Plaintiff's waiver request. (R. at 48-50.) On August 20, 2008, the Agency found Plaintiff without fault in causing the overpayment, but also that recovery would not defeat the purpose of Title II of the Social Security Act ("the Act"), because Plaintiff had the ability to repay. (R. at 48-50.)

At Plaintiff's written request, an ALJ held a hearing on March 12, 2009. (R. at 52-53, 313-32.) On May 20, 2009, the ALJ issued a written opinion, in which he found Plaintiff not at fault in causing the overpayment and waived $30,933.39 of the $49,539.00 overpayment. (R. at 236-40.) The ALJ did not waive recovery of the remaining $18,605.61, because recovery of that amount would not defeat the purpose of Title II. (R. at 240.) On June 28, 2011, the Appeals Council vacated the ALJ's decision because of a missing recording of the hearing. (R. at 249.)

On September 19, 2011, a second ALJ held a hearing. (R. at 289-310.) On November 15, 2011, the ALJ found Plaintiff not at fault in causing the overpayment, but that recovery of the entire overpayment amount, $49,539.00, would not defeat the purpose of Title II. (R. at 12-15.) The ALJ recommended that Plaintiff submit repayments of no more than $50 per month. (R. at 15.) On February 23, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for judicial review purposes. (R. at 4-7.)

Plaintiff then filed suit in this Court on April 19, 2013. *Collier v. Colvin*, 2014 WL 357029. On January 7, 2014, the undersigned recommended remand for clarification regarding

3

the ALJ's calculation of Plaintiff's income and expenses. *Id.* at *1, *5. Plaintiff objected to the Report and Recommendation; however, United States District Judge Robert E. Payne overruled her objections on January 31, 2014. *Id.* at *1. On September 8, 2014, the Appeals Council then remanded the case to the ALJ to conduct another hearing. (R. at 555-56.)

On March 4, 2015, the ALJ held a hearing during which Plaintiff, represented by counsel, testified. (R. at 630-57.) The ALJ again found Plaintiff not at fault in causing the overpayment, but did not waive recovery because it would not defeat the purpose of Title II. (R. at 356-65.) On November 30, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 333-37.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in

the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. THE ALJ'S DECISION

The ALJ first determined that the Agency had overpaid Plaintiff benefits in the amount of $49,539.00 between September 1, 2002 and September 1, 2007. (R. at 355.) He then considered whether Plaintiff qualified for a waiver of overpayment. (R. at 356.) The ALJ found Plaintiff without fault in causing the overpayment, but also that recovery of overpayment would not defeat the purpose of Title II. (R. at 356-65.) In so finding, the ALJ calculated Plaintiff's average monthly net income as $2,697.43. (R. at 365.) By reducing or eliminating several of Plaintiff's claimed expenses, the ALJ determined that Plaintiff's monthly expenses totaled, at most, $2,506.00.[2] (R. at 364-65.) As Plaintiff's monthly income exceeded her monthly expenses, the ALJ did not find that recovery would defeat the purpose of Title II. (R. at 365.) Thus, because recovery would not defeat the purpose of Title II, the ALJ did not waive the entire overpayment amount. (R. at 365.)

---

[2] As the Government points out, the ALJ made a mathematical error when calculating Plaintiff's claimed expenses in the chart in his decision. (Def.'s Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 10) at 10.) He calculated that total as $2,691, when the claimed expenses in the column actually added up to $2,851. (R. at 363-64.) However, he did not make any mathematical errors when calculating the countable expenses. And, only the countable expenses factor into the ALJ's determination, not the claimed expenses. Therefore, his mathematical error does not affect the analysis, and Plaintiff does not claim any prejudice from it.

5

IV. ANALYSIS

Plaintiff argues that the ALJ erred by applying an incorrect legal standard in evaluating whether recovery would defeat the purpose of Title II. (Pl.'s Mem. at 15-16.) Additionally, Plaintiff alleges that substantial evidence does not support the ALJ's findings regarding Plaintiff's expenses. (Pl.'s Mem. at 16-21.) Defendant responds that substantial evidence supports the ALJ's findings, and that the ALJ applied the correct legal standard. (Def.'s Mem. at 13-23.)

The Act requires the Commissioner to recover payments in excess of the correct amount of Title II benefits. 42 U.S.C. § 404(a)(1)(A); 20 C.F.R. § 404.501(a). The Act further provides exceptions to recovery from a person not at fault if the recovery would either (1) "defeat the purpose" of the Act, or (2) "be against equity and good conscience."[3] 42 U.S.C. § 404(b)(1). "The recipient of overpayment bears the burden of showing that the recovery of overpayment should not occur." *Kendrick v. Califano*, 460 F. Supp. 561, 570 (E.D. Va. 1978) (citing *Sierakowski v. Weinberger*, 504 F.2d 831, 836 (6th Cir. 1974)). If recovery would defeat the purpose of Title II, the Commissioner must waive recovery of overpayment. *Collier*, 2014 WL 357029, at *3.

Under the regulations, to "[d]efeat the purpose of [T]itle II means to deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). This determination depends on "whether the person has an income or financial resources sufficient for more than ordinary and necessary needs." *Id.* Ordinary and necessary expenses include fixed living expenses such as food, clothing, rent, utilities, maintenance, insurance, taxes, installment payments, medical expenses and other expenses reasonably considered part of the individual's

---

[3] This action concerns only the "defeat the purpose" exception to recovery of overpayment.

6

standard of living. *Id.* Recovery will defeat the purpose of the Act when the person needs substantially all of her current income to meet current ordinary and necessary living expenses. 20 C.F.R. § 404.508(b).

The Court will first address the ALJ's treatment of Plaintiff's claimed expenses before examining the standard he applied. The ALJ's errors in these two areas necessitate a harmless error analysis.

### A. The ALJ Did Not Err in Discounting Plaintiff's Cable Bill.

Plaintiff first contends that the ALJ should have counted $160 in cable and internet expenses, because the service provider increased the charge from 2009 when it amounted to $125 per month. (Pl.'s Mem. at 18.) Defendant responds that the ALJ made a rational interpretation of the record when he reduced Plaintiff's reported expense. (Def.'s Mem. at 18.)

The Programs Operations Manual System ("POMS")[4] instructs the ALJ to allow expenses that demonstrate consistency with the claimant's standard of living. POMS § GN 02250.120(C)(1)(c). However, the ALJ may exclude "expenses that help a person maintain a luxurious standard of living that developed as a result of the incorrect payments." POMS § GN 02250.120(C)(1)(e). The ALJ should not accept unreasonable expenses that he considers neither ordinary nor necessary. POMS § GN 02250.120(B)(1).

Here, the ALJ did not allow the full amount that Plaintiff claimed for cable services. (R. at 364.) He explained that she had increased her lifestyle by subscribing to premium channels. (R. at 364, 641.) Substantial evidence supports the ALJ's decision to reduce Plaintiff's expenses for cable.

---

[4] The POMS guides the ALJ in making his determinations. A more thorough discussion of the effect of the POMS appears below in Part IV-E.

7

The evidence provides two pillars of support for the ALJ's decision to reduce Plaintiff's cable expense. First, Plaintiff claimed only $125 for cable when she filed for waiver in 2009. (R. at 76.) Therefore, the ALJ could reasonably conclude that her cable package had increased as a result of the incorrect benefits payments. The POMS allow him to reduce such expenditures. POMS § GN 02250.120(b)(1). Second, during the hearing, Plaintiff twice acknowledged that her cable package included premium channels. (R. at 641.) If this acknowledgement appeared ambiguous, Plaintiff's representative had the opportunity to ask clarifying questions. (R. at 646.) Yet, he did not do so. (R. at 647.) Or, Plaintiff could have presented a cable bill or other proof detailing the cable services that she received. POMS § GN 02250.250(A) ("requiring the claimant to submit proof of certain expenses when requesting a waiver.") Without any other evidence to the contrary, the ALJ could reasonably conclude that her cable package included premium channels. Premium channels, by their very name, imply luxury. The Court will not disturb the ALJ's determination that an extra $35 in cable services, which includes additional premium channels, exceeds a necessary expense. Therefore, the ALJ did not err with respect to the cable expenses.

### B. The ALJ Did Not Err in Reducing Plaintiff's Allotment for Monthly Credit Card Bills.

Plaintiff further argues that the ALJ improperly reduced the allotment for her reported monthly credit card payments to the minimum amounts shown on the account statements at Sears, J.C. Penney's and QVC. (Pl.'s Mem. at 20.) Defendant responds that the ALJ properly followed the POMS and that Plaintiff has paid off two of the three accounts. (Def.'s Mem. at 17.)

In factoring charge account payments into the expense calculation, the guidelines direct the ALJ to "reduce to the minimum amount shown on the charge statements." POMS

8

§ GN 02250.120(C)(4). For Plaintiff's credit card accounts at both J.C. Penney's and Sears, the ALJ counted $25 towards expenses instead of the claimed $50. (R. at 364, 504-08.) The ALJ also noted that if Plaintiff had paid the reported $50 per month towards each account, she would have paid the accounts in full months earlier. (R. at 364-65.) With respect to the QVC account, the ALJ did not count the reported $30, because the minimum payment due, $27.30, covered the balance of that account. (R. at 364.)

Substantial evidence supports the ALJ's decision to reduce the credit card expenses. First, the ALJ followed the guidance provided by the POMS by reducing these charges to the minimum payment. POMS § GN 02250.120(C)(4). Second, the account statements support his decision. The most recent statement in the record from J.C. Penney's lists Plaintiff's balance as $14.80 as of July 13, 2014. (R. at 503.) On August 4, 2014, she paid this balance in full, according to her Bank of America statement. (R. at 473.) Instead of completely eliminating this expense that she had paid off, the ALJ allowed her the $25 as presumably tied to her clothing expense. (R. at 364.) Consequently, substantial evidence supports the ALJ's decision to reduce the J.C. Penney's expense to $25.

Similarly, the most recent QVC statement lists Plaintiff's balance as $27.30 on May 19, 2014. (R. at 509.) She paid this balance in full on June 9, 2014, according to her Bank of America statement. (R. at 490.) Therefore, the ALJ properly excluded the payment on her QVC account, as it would not recur.

With respect to the Sears account, the most recent statement shows a balance of $416.13 on May 9, 2014. (R. at 507.) She had no new charges on that statement or the prior month's statement. (R. at 507-08.) Both statements list the minimum payment due as $25. (R. at 507-

08.) Because these statements list the minimum payment as $25, substantial evidence supports the ALJ's decision to reduce the Sears expense to $25.

### C. The ALJ Erred in Discounting Plaintiff's Cab Fare Expenses.

Plaintiff also contends that the ALJ erred in refusing to count Plaintiff's claimed expense of $60 for cabs. (Pl.'s Mem. at 19-20.) Defendant responds that the ALJ reasonably interpreted Plaintiff's testimony. (Def.'s Mem. at 16.) Unlike the cable and credit card expenses, the Court does not find that substantial evidence supports the ALJ's reduction of expenses.

The ALJ did not count Plaintiff's claimed monthly expense of $60.00 for cabs. (R. at 364.) He noted that she "is not sure of this expense and cannot recall the last time she took a cab." (R. at 364.) The ALJ based his conclusion on the following interaction during the hearing:

> Q: So I see cab fare for $60. Is that for an emergency of some kind?
> A: Yeah, it could be. Yeah, I don't recall when the last time we took a cab.

(R. at 644.) From this testimony, the ALJ then concluded that she did not incur the expense. (R. at 364.) The Court finds that this testimony cannot alone support an elimination of the cab fare expense.

Plaintiff's testimony with respect to the cab fare differs from her cable expense testimony in the clarification that it provides. Contrary to the ALJ's conclusion, Plaintiff did not admit that she did not regularly incur the cab fare. (R. at 644.) Rather, she affirmed that it could cover emergencies. (R. at 644.) Neither Plaintiff nor her husband owns a car, and both qualify as legally blind. (R. at 357, 643, 656.) Under these circumstances, requiring cab fare for emergencies could amount to a necessity. Unlike the cable expense, the ALJ gave no indication that he found $60 for cabs unnecessary or unreasonable. Instead, he indicated that he did not believe that Plaintiff actually incurred the expense. (R. at 364.) He based this on a single response from Plaintiff that she could not recall the last cab that she took. (R. at 364.) He did

not press further on her last cab ride. (R. at 644.) He did not ask whether she had taken a cab in the last week, month or year. (R. at 644.) An inability to pinpoint the date of the last cab ride does not necessarily lead to the conclusion that one does not take cabs. Thus, the Court finds that substantial evidence does not support the ALJ's decision to eliminate the expense for cab fare. The Court will analyze the effect of this error below.

### D. The ALJ Erred by Applying the Wrong Legal Standard.

Plaintiff argues that the ALJ applied an overly restrictive standard by requiring Plaintiff to show that she needed "all" of her income to meet her current ordinary and necessary living expenses. (Pl.'s Mem. at 15-16.) Plaintiff contends that the ALJ should have instead determined whether Plaintiff needed "substantially all" of her income to meet ordinary and necessary expenses. (Pl.'s Mem. at 15-16.) Defendant responds that the ALJ applied the correct standard. (Def.'s Mem. at 20-22.)

The regulation requires the ALJ to determine whether the claimant needs substantially all of her income, not all of her income. 20 C.F.R. § 404.508(b). A cardinal rule of construction requires courts to give effect to every word and clause in a statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

Here, the ALJ inquired as to whether Plaintiff needed all of her income. The ALJ began his analysis by asking, "whether the claimant needs all of her current income to meet ordinary and necessary living expenses." (R. at 362.) He then examined her income and her expenses, line by line. (R. at 363-64.) He found that her expenses totaled, at most, $2,506.00. (R. at 364.) Next, he found a monthly income of $2,697.43. (R. at 365.) Because her "average monthly income exceeds the claimant the claimant's average monthly expenses," the ALJ concluded that recovery would not defeat the purpose of Title II. (R. at 365.)

The ALJ erred by only asking whether her income exceeded her expenses. Instead of asking whether she needed substantially all of her income, he asked whether she needed all of it. Under this standard, even a one dollar surplus would suffice. Although he found that Plaintiff had a $191.43 surplus, he did not indicate what lesser surplus, if any, would alter his determination. In applying this overly restrictive standard, the ALJ committed an error. However, the Court will not disturb the ALJ's determination if it constitutes a harmless error.

### E. The ALJ's Errors Were Harmless.

Although the ALJ erred with respect to the cab expense and the standard applied, that does not end the Court's analysis. When confronted with an ALJ's errors, the Court then determines whether to apply the harmless error doctrine. *See Mascio*, 780 F.3d at 639 (analyzing whether the ALJ's error in the credibility assessment was harmless); *Sharp v. Colvin*, 2016 WL 6677633 (4th Cir. 2016) (deeming the ALJ's errors harmless). The burden of establishing a harmful error rests on "the party attacking the agency's determination." *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). In determining the significance of an error, courts must consider, among other factors:

> [A]n estimation of the likelihood that the result would have been different, an awareness of what body . . . has the authority to reach the result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411-12. And "where the circumstances of the case show a likelihood of prejudice, remand is appropriate so that the agency can decide whether consideration is necessary." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010).

An examination of the POMS leads this Court to the conclusion that the result would not have differed had the ALJ applied the "substantially all" standard. At the outset, the Court notes

that the POMS lacks the force of law but deserves some level of deference. *See Washington State Dept. of Social And Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003) (citing the POMS in giving the Commissioner deference in interpreting the regulations); *Hall v. Sebelius*, 689 F. Supp. 2d 10, 18-21 (D.D.C. 2009) ("Although the POMS does not have the force of law, which would entitle it to [a] high level of deference . . . most courts have treated the POMS as interpretive rules entitled to deference at the lower level established in *Skidmore*"); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (noting that the POMS "lack the force of law and create no judicially-enforceable rights"). Despite giving the POMS deference, the Court will resolve any conflict between the POMS and the regulation in favor of the regulation. *See Rodysill v. Colvin*, 745 F.3d 947, 950 (8th Cir. 2014) ("POMS control unless they are inconsistent with the regulation or plainly erroneous.")

Although the POMS does not bind this Court, it still informs the Court's harmless error analysis. The Agency requires ALJs to follow the POMS. SSR 13-2p ("We require adjudicators at all levels of administrative review to follow agency policy . . . such as the Program Operations Manual (POMS) . . . .") Therefore, understanding the POMS that the ALJ must adhere to sheds light on whether the result would change under a different standard.

Here, the POMS provides the framework for the ALJ to use when deciding whether a claimant needs substantially all of her income to cover her ordinary and necessary expenses. The POMS sets forth the rule that recovery would not defeat the purpose of Title II as long as a person's monthly income exceeds her monthly ordinary and necessary expenses by at least $25. POMS § GN 02250.115(A)(3).[5] Thus, the ratio of expenses to income does not factor into the

---

[5] POMS § GN 02250.115(A)(3) provides in full: "Every household has some unbudgeted or unaccountable expenses. In comparing income and expenses, each household is allowed a

13

determination, as Plaintiff argues.[6] (Pl.'s Mem. at 15-16.) The Agency, through the POMS, interprets "substantially all" to include a $25 surplus.[7]

Plaintiff's balance sheet in this case reveals more than a $25 cushion. The Court can make that determination using the ALJ's supported factual findings. The ALJ determined that Plaintiff had a monthly income of $2,697.43. (R. at 365.) He also determined that her ordinary and necessary expenses totaled no more than $2,506.00. (R. at 364.) However, as discussed above, he erroneously eliminated $60 in cab fare from her expenses. Therefore, giving Plaintiff the benefit of the doubt with respect to the full cab fare expense, she has no more than $2,566.00 in expenses each month. These figures leave Plaintiff with a monthly surplus of $131.43.

This surplus leads to the conclusion that the ALJ would have made the same determination whether he analyzed if Plaintiff needed "all" or "substantially all" of her income. Once he determined her income and expenses, the ALJ had no discretion under the POMS to decide what would constitute "substantially all" of her income. Instead, he simply needed to determine whether she had more than a $25 surplus. Knowing the limitations on the ALJ's

---

margin of $25. This margin is used to establish 'adjusted household expenses,' which is compared to household income when deciding defeat the purpose."

[6] Plaintiff's citation of *Teamer v. Sec'y of Health & Human Servs.*, 764 F. Supp. 1328 (N.D. Ind. 1991) does not alter the Court's analysis as that nonbinding case predates the governing POMS.

[7] This example from the POMS illustrates the singular importance of the $25 surplus:

> When Tom and Alice Miles requested waiver in November, they indicated that they rely entirely on their Social Security benefits of $600 a month to meet expenses averaging $600 a month. In December, when the waiver request is being considered in the FO, the cost of living increase has already been announced effective December, payable January 3. Since it is known that the combined benefits will exceed $626 after the cost of living increase (allowing for the increased SMI premium), it is decided (in December after a personal conference) that recovery will not defeat the purpose effective January 3.

POMS § GN 02250.115, ex. 1.

14

discretion helps the Court determine whether the outcome could have changed under the correct standard. The Court need not engage in any detailed factual or legal analysis to determine that Plaintiff's monthly income exceeds her expenses by more than $25.

Furthermore, the Court has no reason to believe that the ALJ would not follow the POMS in comparing Plaintiff's income and expenses. In fact, the ALJ references the POMS throughout his decision. (R. at 357, 358, 360, 363.) He noted its importance, finding that "POMS assists in deciding on the issue of whether recovery of the overpayment does or does not defeat the purpose of Title II of the Act and is an application of the policy built upon the regulations promulgated under the Act itself." (R. at 357.) Although he did not discuss the specific POMS at issue, his general approach to the POMS leaves the Court confident that he would, and perhaps implicitly did, follow POMS § GN 02250.115(A)(3). Therefore, he still would have found that recovery would not defeat the purpose of the Act.[8]

Plaintiff has not met her burden of establishing that the ALJ's errors altered the outcome. Therefore, the Court finds that any error on the part of the ALJ amounted to no more than a harmless error.

V.     CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

---

[8] The ALJ also concluded that he could consider Plaintiff's three 401(k)s as assets. (R. at 362-63.) Ultimately, he did not factor in the 401(k) plans, because he did not need to reach that step based on Plaintiff's income and expenses. (R. at 363.) Had he found that Plaintiff needed substantially all of her income, he then would have looked to her other assets. POMS § GN 02250.115(A)(4). The Court need not make any determinations regarding Plaintiff's assets, as it does not have those issues before it. However, the ALJ's conclusion that he *could* use the 401(k) plans further weakens the force of the error, as it provides yet another layer of insulation for the ALJ's ultimate determination.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: <u>December 19, 2016</u>